**Alpheus COLLENS, Plaintiff,**

v.

**CITY OF NEW YORK,
et al., Defendants.**

**No. 03 CIV. 4477(JGK).**

United States District Court,
S.D. New York.

July 12, 2004.

---

Glenn A. Wolther, New York City, for Plaintiff.

Hillary Ann Frommer, Corporation Counsel of the City of New York, New York City, for Defendants.

### OPINION and ORDER

KOELTL, District Judge.

This is a civil rights action alleging that officers of the New York City Police Department violated the plaintiff's constitutional rights by wrongfully issuing him a summons. The plaintiff claims that he was issued the summons in retaliation for exercising his constitutionally protected rights to freedom of speech and because of racial animus. The defendants now object to the June 8, 2004 rulings by Magistrate Judge Pitman compelling defendant Police Officer Tara Cullen to disclose her home address for discovery purposes.

The Objections should be sustained only if the Magistrate Judge's ruling was clearly erroneous or contrary to law. *See* Fed.R.Civ.P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *In re Buspirone Patent Litig.*, 210 F.R.D. 43, 52 (S.D.N.Y.2002). An order is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Surles v. Air France*, No. 00 Civ. 5004, 2001 WL 1142231, at *1 (S.D.N.Y. Sept. 27, 2001) (internal quotation omitted). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation omitted).

## I.

On June 8, 2004, Officer Cullen was produced for her deposition, and during the deposition certain discovery issues arose, including whether Officer Cullen should be required to disclose her home address on the record during the deposition. The parties sought judicial intervention and placed a telephone call to Magistrate Judge Pitman. The plaintiff argued that Officer Cullen should be required to disclose her home address, date of birth, and social security number because those things "in the normal run of the mill case would be pertinent to damages absent an indemnification agreement, the ability to [pay] punitive damages, salary, things like that." (*See* June 8, 2004 Tr. at 11.) The defendants objected arguing that the information is not relevant to any claim or defense and that disclosure would create a risk to the officer's safety.

The Magistrate Judge rejected the request for the officer's social security number and birth date, but he ordered Officer Cullen to disclose her home address for the record at the deposition. (*Id.* at 14.) The Magistrate Judge dismissed the potential threat to the officer as speculative and found the information relevant and discoverable on the grounds that the plaintiff might want to investigate whether the defendant's neighbors have overheard her making racist remarks. (*Id.* at 14–15.) In a subsequent telephone call to the Magistrate Judge, the defendants reiterated their concern for the officer's safety and sought a protective order to ensure that the information would not be disclosed to the plaintiff himself. (*Id.* at 16–17.) Plaintiff's counsel had agreed that the information could be deemed confidential pursuant to a protective order already in place (*see id.* at 13–14), but he opposed withholding the information from his client, and the Magistrate Judge declined the request for a further protective order (*id.* at 17–21).

## II.

The defendants object to the Magistrate Judge's rulings on the grounds that the information is irrelevant to the plaintiff's claims and should be protected because disclosure would threaten the officer's safety. They also specifically assert that Officer Cullen's home address is covered by the "official information" privilege. Because Officer Cullen already provided the information during her deposition, the defendants request that this Court issue an order striking the officer's home address from the record, redacting it from the deposition transcript, and instructing plaintiff's counsel not to reveal the information to his client. *See* Fed. R.Civ.P. 26(c) (allowing court, "for good cause shown," to issue protective order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). The legal standards relevant to the dispute are as follows.

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure, as amended in 2000, provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The 2000 Amendments, while not intended to alter dramatically the scope of discovery, were intended to make it "narrower than it was, in some meaningful way." *Surles,* 2001 WL 1142231, at *1 n. 3 (internal quotations omitted). The Advisory Committee explained that the amendments were designed to "focus [discovery] on the actual claims and defenses involved in the action," and "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." Fed. R.Civ.P. 26(b)(1) Advisory Committee Notes to 2000 Amendments. The Advisory Committee noted that "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. . . . [T]he determination whether such information is discoverable because it is relevant to the claims or defenses depends on the cir-

cumstances of the pending action." *Id.* While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a "fishing expedition" into actions or past wrongdoing not related to the alleged claims or defenses. *See Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002); *Surles v. Air France*, No. 00 Civ. 5004, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001) (Maas, M.J.) (stating that even under unamended version of Rule 26(b)(1), courts "would routinely decline to authorize fishing expeditions"), *aff'd, Surles*, 2001 WL 1142231; *Spina v. Our Lady of Mercy Med. Ctr.*, No. 97 Civ. 4661, 2001 WL 630481, at *2–*3 (S.D.N.Y. June 7, 2001) (citing text of Rule 26(b)(1) prior to 2000 Amendments).

■ Even where information may be relevant, discovery should not be compelled if the information is privileged or if there is good cause for a protective order. *See* Fed. R.Civ.P. 26(b)(1), 26(c). Because this case has been brought pursuant to 42 U.S.C. § 1983, among other federal civil rights provisions, the defendants' assertion of the "official information" privilege is governed by federal common law. *See Unger v. Cohen*, 125 F.R.D. 67, 69 (S.D.N.Y.1989); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y.1988). While the official information privilege is rooted in state law, federal courts have recognized this qualified privilege as generally covering the disclosure of police material and personnel files, including officers' home addresses. *See King*, 121 F.R.D. at 187–90; *see also Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y.2000); *Morrissey v. City of New York*, 171 F.R.D. 85, 91–92 (S.D.N.Y.1997). The privilege reflects "the state's general concern in protecting police personnel files and investigative reports from 'fishing expeditions.'" *Morrissey*, 171 F.R.D. at 92; *see also Unger*, 125 F.R.D. at 69.

■ State law privileges, however, are limited by the interest in enforcing federal rights through broad discovery. *See Morrissey*, 171 F.R.D. at 92; *Unger*, 125 F.R.D. at 69; *King*, 121 F.R.D. at 187. Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed. *See Nat'l Cong.*, 194 F.R.D. at 92 (discussing need to balance interests in motion for Rule 26(c) protective order sought on grounds of privilege); *King*, 121 F.R.D. at 188–90 (discussing competing interests for assertions of privilege and requests for protective orders); *cf. In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 36 (S.D.N.Y.2003) (listing factors for Rule 26(c) motion).

■ Specifically, under the procedure established by *King* for evaluating assertions of the official information privilege, the party resisting disclosure first must make a "substantial threshold showing" of a specific harm connected to the disclosure of specific information. *King*, 121 F.R.D. at 190. If such a showing is made, the court must then balance the interests for and against disclosure:

> The factors disfavoring disclosure are the threat to the safety of police officers, the invasion of the privacy of police officers, the weakening of law enforcement programs or procedures, the chilling of police investigative candor, the chilling of citizen complainant candor, and state privacy law. The factors favoring disclosure are the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information.

*Morrissey*, 171 F.R.D. at 92 (citing *King*, 121 F.R.D. at 190–96).

### III.

■ In this case, the plaintiff initially sought to compel the disclosure of Officer Cullen's home address for the purpose of investigating her ability to pay punitive damages. (*See* June 8, 2004 Tr. at 11.) The Magistrate Judge did not grant the discovery request on those grounds and instead surmised that the plaintiff might use the information to ask neighbors whether they have overheard the defendant making racist remarks in social settings. (*See id.* at 14–15.)

The Magistrate Judge's stated basis for disclosure, however, was never the plaintiff's justification, and it suggests that the information could be used only for a fishing expedition. There is no basis for believing that the information would lead to the discovery of admissible evidence relevant to the plaintiff's claims. *See Tottenham,* 2002 WL 1967023, at *2 ("Discovery requests cannot be based on pure speculation or conjecture."); *Surles,* 2001 WL 1142231, at *2 (refusing to permit discovery where defendant had no factual basis that requests would lead to relevant evidence). The information is not designed to lead to evidence of Officer Cullen's conduct in her role as a public official, and the defendants represent that the plaintiff has already received unredacted CCRB files on Officer Cullen and will be able to speak with her supervisors and former partners. The fact that the plaintiff did not initially seek the officer's home address to investigate her private conduct further demonstrates that the information is not relevant to proving liability and that the "reasonable needs of the action" do not warrant disclosure. *See* Fed.R.Civ.P. 26(b)(1) Advisory Committee Notes.

■ Moreover, Officer Cullen's home address is protected by the official information privilege because Officer Cullen's interests in privacy and safety outweigh the plaintiff's interest in this specific and narrow piece of information. The defendants do not have proof that harm would occur, and the case does not, for example, involve a history of violence between the plaintiff and Officer Cullen. *See King,* 121 F.R.D. at 191 (noting that privilege could protect disclosure of officers' "home addresses in cases involving past violence between the officers and the plaintiffs or other members of the community"). Nonetheless, police officers play a significant role in law enforcement that may subject them danger, and they have a justifiable fear that disclosing their home addresses could jeopardize their safety.

■ While disclosure of an officer's home address may be required in individual cases where there is a need for such disclosure, in this case the plaintiff's interests in obtaining the officer's home address are extremely weak. As explained above, there is no basis for believing that the information will lead to relevant evidence, and even if it did, the evidence, at best, would be only marginally relevant and would not be important to the plaintiff's case. The plaintiff will be able to investigate the defendant's prior conduct as an officer, but a fishing expedition into the officer's private life is not warranted on the grounds announced by the Magistrate Judge. *See Morrissey,* 171 F.R.D. at 93 (enforcing official information privilege against discovery request that amounted to fishing expedition).

■ The plaintiff's original argument to the Magistrate Judge that the information would be relevant for punitive damages also does not warrant disclosure. Issues of punitive damages should normally be bifurcated from issues of liability so that proof of wealth is not admitted at the trial on liability and compensatory damages. *See, e.g., Hamm v. Potamkin,* No. 98 Civ. 7425, 1999 WL 249721, at *1–*2 (S.D.N.Y. Apr. 28, 1999). The issue of punitive damages thus may never arise, and discovery on that issue is not necessary at this time. Even if some pretrial financial discovery may be appropriate, there are more efficient and less intrusive means for obtaining financial information at this point, such as having Officer Cullen swear to an affidavit declaring her net worth. *See id.* at *2; *Hazeldine v. Beverage Media, Ltd.,* No. 94 Civ. 3466, 1997 WL 362229, at *3–*4 (S.D.N.Y. June 27, 1997).

■ In sum, without some reasonable need for the information, the officer's home address should not be disclosed simply on a statement of the plaintiff's desire for it. The defendant should not have to prove that harm will befall her nor should she have to wait for harm to occur. Indeed, courts have often protected the disclosure of "particularly personal information" such as officers' home addresses even where defendants have failed to establish the existence of a privilege as to employment records generally. *See Melendez v. Greiner,* No. 01 Civ. 7888, 2003 WL 22434101, at *7 n. 2 (S.D.N.Y. Oct. 23, 2003) (rejecting claim of privilege as to employment records but allowing for redaction of

home addresses); *see also Martinez v. Robinson,* No. 99 Civ. 11911, 2002 WL 424680, at *5 (S.D.N.Y. Mar. 19, 2002) (granting discovery request for officers' information except for home addresses); *McPhaul v. New York City Housing Auth.,* No. 93 Civ. 423, 1995 WL 408371, at *1 (S.D.N.Y. July 11, 1995) (ordering disclosure of officers' personnel files but ruling that "[n]otwithstanding the complete failure of defendants' counsel to make any showing of harm, the [defendants] will be permitted to delete from the file the home addresses, telephone numbers and social security numbers of the two officers"); *Unger,* 125 F.R.D. at 70 (ordering disclosure of personnel records because defendants failed to meet threshold showing of privilege under *King,* but stating that officers' home addresses could be redacted).

## Conclusion

The objections to Magistrate Judge Pitman's rulings are sustained. The requested information is not relevant to the plaintiff's claims, and, moreover, the information is covered by the official information privilege and good cause exists for a protective order. Because the information was already provided by Officer Cullen during her deposition, the officer's home address should be stricken from the record and redacted from the deposition transcript. Plaintiff's counsel is also directed not to divulge the information to anyone, including his client.

**SO ORDERED.**